# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSHUA JOHNKE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 14-cv-6992 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| FRANCISCO ESPINAL-QUIROZ, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On August 23, 2017, the Court granted Blopleh's motion for partial summary judgment on Count 6 of the Third Amended Complaint, which seeks to hold Defendant Steel Warehouse Company LLC liable as a motor carrier under the theory that Defendant Steel Warehouse Inc. is an empty shell and Steel Warehouse Company LLC is its alter ego; the Court also granted Blopleh's motion to strike the affidavit of Gerald Lerman, an officer of both Steel Warehouse entities, that Defendants submitted along with their opposition to the summary judgment motion. [See 286.] Currently before the Court is the Steel Warehouse Defendants' motion [315] for reconsideration of the August 23, 2017 memorandum opinion and order pursuant to F.R.C.P. Rule 54(b). For the reasons that follow, Defendants' motion [315] is denied. As a housekeeping matter, the motion for reconsideration that Defendants filed as docket entry 118 on the individual Blopleh case docket, 14-cv-7364, instead of the instant master case docket, is denied as moot. This case is set for further status hearing on July 24, 2018 at 9:00 a.m. to discuss whether briefing schedules should be set for all Plaintiffs' motion [290] to extend the Court's ruling to the consolidated cases and Blopleh's motion for partial summary judgment as to liability [297].

**I. Background**

The full background of this case is set forth in the Court's summary judgment opinion, knowledge of which is assumed here. [See 286, at 2–12.] Nevertheless, the Court will set forth the facts and procedural history relevant to the currently pending motion.

This case is one of several lawsuits stemming from a July 21, 2014 multi-vehicle collision that occurred in Will County, Illinois. On this date Defendant Francisco Espinal-Quiroz, while driving a semi-tractor carrying a semi-trailer, allegedly collided with several passenger vehicles that were stopped in traffic on Interstate 55. This collision resulted in multiple fatalities, including the death of Ulrike Blopleh. [286, at 5.] Moses Blopleh ("Blopleh") filed a lawsuit in response to this event as a representative for his late wife's estate and as a representative of his minor children, [see 168], which was consolidated with two related lawsuits for discovery purposes on the instant docket, [see 22].

In addition to Defendant Espinal-Quiroz, Blopleh named as defendants Steel Warehouse Inc. and Steel Warehouse Company LLC (the "Steel Warehouse Defendants"). On the date of the collision, Espinal-Quiroz was delivering steel for Steel Warehouse Company LLC. [210, ¶ 7.] Steel Warehouse Company LLC is a steel service center that processes and sells steel. Steel Warehouse Inc. is a licensed interstate motor carrier charged with the delivery of Steel Warehouse Company LLC goods. [286, at 6.] Blopleh's 70-count complaint seeks to hold the Steel Warehouse Defendants liable for Espinal-Quiroz's actions on the date of the collision through various theories of negligence and vicarious liability. Count 6 of Blopleh's Third Amended Complaint specifically alleges that, while Steel Warehouse Inc. holds a motor carrier license, in actual practice Steel Warehouse Company LLC is the entity acting as a motor carrier within the meaning of the relevant federal statute and regulations. [168, ¶¶ 36–37.]

Blopleh originally moved for partial summary judgment as to Counts 1 and 6 of the Second Amended Complaint. [See 141.] After Blopleh filed a Third Amended Complaint,[1] he moved to set a briefing schedule on this previously-filed summary judgment motion. [See 180.] The Steel Warehouse Defendants, in turn, requested an extension of time to respond to Blopleh's motion pursuant to Federal Rule of Civil Procedure ("Rule") 56(d).[2] [See 160.] In support of this request, the Steel Warehouse Defendants submitted an affidavit stating that because fact discovery remained open at the time, the parties were still waiting to depose certain individuals and Defendants were thus unable to present facts essential to their opposition until those depositions were completed. Specifically, the Steel Warehouse Defendants stated that the parties had not yet deposed: (1) the five police officers that responded to the collision; (2) representatives of Parsons Company and Caterpillar, recipients of the loads that Defendant Espinal-Quiroz delivered on the same day as the collision; and (3) Defendant Espinal-Quiroz. [See 160, at 5–6.]

The Court granted in part and denied in part this motion. [See 184.] The Court agreed that it was appropriate to defer consideration of Blopleh's summary judgment motion as to Count 1, which alleges that Steel Warehouse Inc. is vicariously liable for Espinal-Quiroz's actions, because the testimony of the identified witnesses could bear on that issue. [See 184, at 2.] However, the Court allowed briefing to proceed on the motion for partial summary judgment as to Count 6 because the Steel Warehouse Defendants had not made an adequate showing under Rule 56(d) that any of the pending discovery they identified in their motion would have any

---

[1] Counts 1 and 6 are identical in both the Second and Third Amended Complaints. See [168]; 14-cv-7364, D.E. 39.

[2] Rule 56(d) states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

3

bearing on the relevant Count 6 issues relating to the corporate structure of the Steel Warehouse Defendants themselves. [*Id.*]

Briefing thereafter proceeded on the motion for partial summary judgment as to Count 6 only. The Court granted this motion. [See 286.] In doing so, the Court first addressed Blopleh's accompanying motion to strike the affidavit of Gerald Lerman, which the Steel Warehouse Defendants had submitted with their opposition to the summary judgment motion. [See 210, Ex. A.] In this affidavit, Gerald Lerman stated that he is General Counsel and a Vice President of both Steel Warehouse Company LLC and Steel Warehouse Inc. He then made several statements about how Steel Warehouse Company LLC and Steel Warehouse Inc. are separate entities. Blopleh objected to this affidavit, arguing that these statements were hearsay and were made without confirming Mr. Lerman's personal knowledge of the facts contained within them. The Court ultimately did not address these substantive objections to the affidavit because it suffered from an even more fundamental flaw: it was not sworn to before an officer authorized to administer an oath, nor did it comply with the requirements of 28 U.S.C. § 1746 for unsworn declarations. [286, at 3–5.] The Court thus did not consider the Steel Warehouse Defendants' fact statements or responses to Blopleh's fact statements that relied on Mr. Lerman's affidavit. [*Id.*][3]

The Court then granted Blopleh's motion for summary judgment on Count 6. The Court concluded that there was ample undisputed evidence indicating that Steel Warehouse Inc. is a mere instrumentality of Steel Warehouse Company LLC such that the two companies should be treated as alter egos. See *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 652 (7th Cir. 2015) (setting out standard in Illinois for treating two entities as one under the alter ego

---

[3] For the same reason, the Court also struck another affidavit of Gerald Lerman that Blopleh had submitted as part of the partial summary judgment motion. [See 195-6, at Tab 42.]

doctrine). Specifically: (1) the history of Steel Warehouse Inc.'s creation suggests that it is a "mere façade" for Steel Warehouse Company LLC; (2) the affiliation between the two companies, which are owned by members of the Lerman family, indicates that no arm's length relationship exists between them; (3) Steel Warehouse Company LLC treats the assets of Steel Warehouse Inc. (specifically, its trucks) as its own; (4) confusion exists with regard to Steel Warehouse Inc.'s corporate recordkeeping; (5) no officer of Steel Warehouse Company LLC who did work for any other Lerman-family company received a separate paycheck for that work, and each such officer was paid instead by Steel Warehouse Company LLC only; (6) the undisputed goal of Steel Warehouse Inc. is not to turn a profit, but rather to deliver Steel Warehouse Company LLC's products to customers without losing money; (7) there is overlapping ownership between the two entities; (8) Steel Warehouse Inc. has no employees of its own, but essentially operates as a transportation department of Steel Warehouse Company LLC; (9) Steel Warehouse Inc. is located on Steel Warehouse Company LLC's industrial campus, and the two companies share a phone number, corporate logo, web address, email address, P.O. Box, and computer system; (10) the two entities hold themselves out to the public as one entity on the Steel Warehouse Company LLC website; and (11) without Steel Warehouse Company LLC, Steel Warehouse Inc. would have no employees, no method of paying its officers, no location to store its trucks, and no shipments to deliver. [286, at 16–19.] The Court also concluded that permitting the Steel Warehouse Defendants to manipulate the corporate form to escape potential motor carrier liability would promote an injustice. [*Id.*, at 19–20.] The Court specifically declined to express an opinion on any of the other issues alluded to in the parties' briefs, including whether Defendant Espinal-Quiroz can be considered an agent or employee of

any entity other than Espinal Trucking or whether either Steel Warehouse Defendant owes a duty to Blopleh, and only ruled on the alter ego issue. [*Id.*, at 13 n.4.]

The Steel Warehouse Defendants thereafter moved for reconsideration of this order, [see 315], which is currently before the Court.

## II. Legal Standard

Because there has not yet been a final judgment in this case, Rule 54(b) governs the Steel Warehouse Defendants' motion for reconsideration. Under Rule 54(b), "any order or other decision [ ] that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); see also *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), opinion amended on denial of reh'g, 835 F.2d 710 (7th Cir. 1987) (affirming district court's denial of motion to reconsider under Rule 54(b)).

Revisions under Rule 54(b) are discouraged and should be reserved for circumstances in which the initial decision was "clearly erroneous and would work a manifest injustice." See *Ghashiyah v. Frank*, 2008 WL 680203, at *3 (E.D. Wis. Mar. 10, 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (internal quotation marks omitted). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *Id.* (citation and internal quotation marks omitted).

Motions to reconsider under Rule 54(b) "are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Ghashiyah*, 2008 WL 680203, at *3. The Court may grant a Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial, points to evidence in the

6

record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012); *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller*, 683 F.3d at 813 (citation and internal quotation marks omitted). Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Id.* (citation and internal quotation marks omitted). Additionally, "'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

Given that the Steel Warehouse Defendants essentially seek a "do-over" of the issue resolved in the Court's partial summary judgment order, a recap of the relevant portions of Rule 56 also is in order. They complain, citing a case from another circuit that is almost four decades old, that "[s]ummary judgment normally should not be granted before discovery is completed." [319, at 6 (citing *Murrell v. Bennett*, 615 F.2d 306, 310 (5th Cir. 1980)).]. But that contention finds no support in the rule itself and is contrary to the law of our circuit. While Rule 56 contains a time limit on the back end of a case—that is, absent a local rule or court order to the contrary, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery"—there is no time limit on the front end of a lawsuit. As the Seventh Circuit has explained, the "'fact that discovery is not complete—indeed, has not begun—need not defeat the motion. A defendant may move for summary judgment at any time.'" *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1002 (7th Cir. 1994) (quoting *American Nurses Ass'n*

7

*v. Illinois*, 783 F.2d 716, 729 (7th Cir. 1986)). Indeed, as the Seventh Circuit has suggested, an early summary judgment motion can simplify a case, thereby reducing litigation costs. *S. Austin Coalition Cmty. Council v. SBC Commc'ns, Inc.*, 274 F.3d 1168, 1171 (7th Cir. 2001) ("District courts may mitigate the expense of litigation by resolving motions for summary judgment early in the case—in advance of discovery, if appropriate, for summary judgment may be sought at any time.") (citing Fed. R. Civ. P. 56). In fact, Steel Warehouse Defendants sought both dismissal and summary judgment in their original pleadings in this case. [See 28, 60 in Case No. 14-cv-7364.]

Rule 56(d)—formerly Rule 56(f) prior to the 2010 amendment—"envisions a situation * * * where summary judgment is sought prior to the initiation [or completion] of discovery." *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (holding that district court did not abuse its discretion in denying plaintiff's request for additional discovery that was "irrelevant to his equal protection claim and would amount to no more than a fishing expedition"). Rule 56(d) posits a choice for the litigant faced with a summary judgment motion prior to the close of discovery: either (a) respond to the motion or (b) provide "specified reasons" why "it cannot present facts essential to justify its opposition" to the motion and request time to take discovery to that end. Where, as here, litigants choose option (b), "[d]istrict courts have broad discretion in directing pretrial discovery." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015) (stressing the need to identify specific evidence needed to respond to the motion).

III. **Analysis**

   A. **The Steel Warehouse Defendants Do Not Present Genuinely "New" Evidence**

In support of their motion for reconsideration, the Steel Warehouse Defendants point to what the claim to be "newly discovered evidence," presented largely in a renewed affidavit from

8

Mr. Lerman. Specifically, the Steel Warehouse Defendants argue that, after the partial summary judgment motion was fully briefed, but before fact discovery closed, depositions were taken and documents were produced that bear directly on the issue of whether the Steel Warehouse Defendants should be considered alter egos. Defendants argue that this evidence qualifies as "newly discovered" because it was secured while fact discovery remained open but after the partial summary judgment motion was fully briefed, and thus it is evidence that can be used at trial but was not considered by the Court in its ruling. [See 315, at 6.] The Steel Warehouse Defendants further argue that the Court should not have struck Mr. Lerman's affidavit on technical grounds but should have instead considered its merits; that the Court should not have denied their request for more time to conduct discovery pursuant to Rule 56(d); and that it would be inequitable for the Court to ignore the substance of the evidence attached to their reconsideration motion, which bears directly on the alter ego issue. [See 319, at 3–9.] According to the Steel Warehouse Defendants, when this newly discovered evidence is considered alongside other evidence in the record, a material question of fact regarding the relationship between the two Steel Warehouse Defendants exists. Therefore, the Court should reconsider its previous order and deny Blopleh's motion for partial summary judgment on the alter ego issue. [315, at 5–6.] Blopleh argues in turn that the evidence the Steel Warehouse Defendants use to support their reconsideration motion is not "newly discovered," and thus no proper basis for reconsideration of the Court's previous opinion exists. [312, at 5–6.]

In support of their reconsideration motion, the Steel Warehouse Defendants have submitted a revised affidavit from Mr. Gerald Lerman that is sworn to before a notary public, states that it is made under penalty of perjury, and states that Mr. Lerman has personal and firsthand knowledge of the matters attested to within it. [See 315, Ex. A.] Furthermore, this

9

revised affidavit references various other documents that are attached to the reconsideration motion. The documents attached to the reconsideration motion, the Steel Warehouse Defendants argue, constitute the "newly discovered evidence" that the Court should now consider. Specifically, the documents attached to the reconsideration motion are (1) the deposition transcripts of Gerald F. Lerman both individually and as a 30(b)(6) representative of Steel Warehouse Inc. and J.H. Jones [315, Ex. B]; (2) the deposition transcript of Moshe Glenner, the former director of logistics for J.H. Jones [*Id.*, Ex. C]; (3) the Steel Warehouse Inc. certificate of incorporation [*Id.*, Ex. D]; (4) annual reports of Steel Warehouse Inc. for the years 2009–2018 [*Id.*, Ex. E]; (5) the Steel Warehouse Company LLC certificate of organization [*Id.*, Ex. F]; (6) annual reports of Steel Warehouse Company LLC for the years 2009–2018 [*Id.*, Ex. G]; (7) labor invoices from J.H. Jones to Steel Warehouse Inc. for the year 2014 [*Id.*, Ex. H]; (8) labor invoices from J.H. Jones to Steel Warehouse Company LLC for the year 2014 [*Id.*, Ex. I]; (9) profit and loss statements for Steel Warehouse Inc. for the years 2010–2015 [*Id.*, Ex. J]; (10) balance sheets for Steel Warehouse Inc. for the years 2011–2014 [*Id.*, Ex. K]; (11) J.H. Jones, LLC's response to Plaintiffs' request for admissions [*Id.*, Ex. L]; (12) income tax returns for Steel Warehouse Inc. for the years 2011–2014 [*Id.*, Ex. M]; (13) income tax returns for Steel Warehouse Company LLC for the years 2011–2014 [*Id.*, Ex. N]; and (14) Defendants' response to Plaintiff's Local 56.1 Statement of Admission of Facts [*Id.*, Ex. O].

The Court will first address the decision to strike Mr. Lerman's original affidavit that was filed with Defendants' opposition to summary judgment. The Court struck this affidavit, and declined to consider any of the Steel Warehouse Defendants' fact statements that relied on it, because it was an unsworn document that did not qualify as an admissible affidavit, and it did not otherwise comply with the requirements of 28 U.S.C. § 1746 for unsworn declarations. [See

286, at 3.] The Steel Warehouse Defendants do not argue that the Court misinterpreted the law or that it misapprehended any fact that would warrant reconsideration of this decision. Instead, the Steel Warehouse Defendants argue that the Court struck the Lerman affidavit on the basis of technicalities, improperly elevating form over substance. [See 315, at 6–7; 319, at 3–5.] The Steel Warehouse Defendants urge the Court to reconsider this decision and consider the substance of the revised Gerald Lerman affidavit submitted with their reconsideration motion.

The Court discerns no reason to reconsider its earlier decision striking Mr. Lerman's affidavit, and therefore the Court will not consider the substance of the revised version. The original Lerman affidavit was not competent evidence because it did not meet the fundamental requirements for affidavits submitted on summary judgment. See *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (unsworn statements do not meet the requirements for evidence submitted on summary judgment). Therefore, the Court simply could not consider the original affidavit's substance. See *DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 471 (7th Cir. 1990) (affidavit that was not notarized and unable to invoke § 1746 "was not within the range of evidence that the district court could consider" on a motion for reconsideration of a summary judgment opinion); *Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1255 n.13 (7th Cir. 1990) ("[T]hese affidavits [submitted on summary judgment] were neither notarized nor made under the penalty of perjury * * * As such, we can simply ignore them."); *Hu v. Vill. of Maywood*, 2010 WL 276704, at *5 (N.D. Ill. Jan. 19, 2010) ("However, Plaintiff's affidavit is not dated and does not contain the requisite 'under penalty of perjury' language. Therefore, it must be stricken."); *Cornelius v. Hondo Inc.*, 843 F. Supp. 1243, 1248 (N.D. Ill. 1994) (where affidavit submitted on summary judgment was unsworn and did not comply with the requirements of § 1746, it was inadmissible and the court "simply lack[s] the authority to consider its contents");

see also *Sellers v. Henman*, 41 F.3d 1100, 1101 (7th Cir. 1994) (noting that "[o]ne of the defendants' key affidavits was unsigned and hence unsworn * * * so we do not understand the district court's refusal to strike it.").

The Steel Warehouse Defendants acknowledge that these defects existed in the original Lerman affidavit, and they do not argue that the Court should now consider this original affidavit. Instead, they argue that it would inappropriately elevate form over substance for the Court to ignore the revised Lerman affidavit that corrects these deficiencies and incorporates additional factual assertions in an effort to counter many of the substantive objections that Blopleh had originally raised in the motion to strike. [319, at 5.] But a motion for reconsideration is not appropriately used to correct prior procedural deficiencies. See *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); see also *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000) (a motion to alter or amend the judgment "does not provide a vehicle for a party to undo its own procedural failures") (citation omitted). The Steel Warehouse Defendants have not presented the Court with a "manifest error of law or fact" that would warrant reconsideration of the Court's decision to strike Mr. Lerman's original affidavit. *Miller*, 683 F.3d at 813. Therefore, the Court will not consider the revised Lerman affidavit that the Steel Warehouse Defendants have submitted.

In addition to the revised affidavit, the Steel Warehouse Defendants have supported their motion for reconsideration with several other documents that, they contend, demonstrate a material question of fact remains on the alter ego issue. Contrary to Defendants' representations, however, these documents do not meet the definition of "newly discovered evidence" that would warrant reconsideration of the Court's earlier decision. "To support a motion for reconsideration based on newly discovered evidence, the moving party must show not only that this evidence

was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence during the pendency of the motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotation marks and citation omitted); see also *Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 861 (7th Cir. 2009) (affirming denial of a motion to reconsider judgment where "newly discovered evidence," in the form of expert deposition testimony, could have been discovered before the summary judgment deadline or before the district court issued its summary judgment order).

The documents that the Steel Warehouse Defendants contend are newly discovered fall into two categories, neither of which constitutes new evidence. First, the Steel Warehouse Defendants have submitted corporate records—formation documents, annual reports, invoices, profit and loss statements, balance sheets, and tax returns—for each Steel Warehouse entity, dated 2009–present. All of these documents existed well before the motion for partial summary judgment was filed. The Steel Warehouse Defendants have not presented any reason for why these documents, *which clearly originate from the Steel Warehouse Defendants themselves and were thus uniquely within their control*, were not produced earlier and attached to their summary judgment opposition.[4] See *Oto*, 224 F.3d at 606 ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) ("Gulfco cannot

---

[4] Ironically, as Blopleh points out, [312, at 6], and a review of the docket confirms, the Steel Warehouse Defendants resisted requests for production of at least some of these documents—the tax returns and the profit and loss statements—well before the Court issued its summary judgment opinion. [See 125 (Steel Warehouse Defendants' motion to quash third-party subpoenas for their 2007–2014 tax returns); 237 (ordering Steel Warehouse Defendants to produce their 2011–2014 tax returns in response to a motion to compel); 270 (ordering Steel Warehouse Defendants to produce their 2010–2015 profit and loss statements in response to a motion to compel).]

13

now introduce evidence to which it had access when it tendered its previous filings.") (citing *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985)).

Second, the Steel Warehouse Defendants have submitted with their motion three depositions transcripts (two depositions of Gerald Lerman and one deposition of Moshe Glenner), Defendant J.H. Jones LLC's response to Plaintiff's request for admissions, and the Steel Warehouse Defendants' Response to Blopleh's Local Rule 56.1 Statement of Facts. Two of these documents are clearly not newly discovered evidence because they were available to the parties when the Court ruled on the partial summary judgment motion: Gerald Lerman's deposition testimony from April 18, 2016, [see 315-3, at 2], and the Steel Warehouse Defendants' Response to Blopleh's Local Rule 56.1 Statement of Facts, [see 315-12]. Indeed, both of these documents were submitted as part of the original summary judgment briefing and extensively considered by the Court in its ruling. [See, *e.g.*, 286, at 6–7.] The facts that the Steel Warehouse Defendants attempt to introduce using these documents merely raise arguments that have already been rejected by the Court, which is not an appropriate use of a motion for reconsideration. See *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014) (finding no error in denial of motion for reconsideration where plaintiff merely rehashed previously rejected arguments). As to the second Lerman deposition, the Moshe Glenner deposition, and other written discovery, the Steel Warehouse Defendants have not presented any compelling reason why any of the information contained within these documents could not have been obtained and submitted during the original summary judgment briefing. See *Oto*, 224 F.3d at 606; see also *Dobbey v. Carter*, 2017 WL 2573210, at *5 (N.D. Ill. June 14, 2017) (citations omitted) (refusing to consider on a motion for reconsideration an affidavit detailing a conversation that took place with a potential witness, where the plaintiff did not demonstrate why he could not

have obtained this evidence earlier through reasonable diligence). All of these documents *reference facts that existed well before the summary judgment briefing began* and thus could have been obtained earlier. Therefore, these documents also fail to meet the definition of newly discovered evidence.

The Steel Warehouse Defendants nevertheless maintain that all of the documents they have submitted qualify as "newly discovered evidence" because they were produced while fact discovery remained open, but they were only produced after the motion for partial summary judgment was fully briefed and thus were not available in time for the Court to consider them. This coincides with Defendants' argument that the Court erroneously denied their motion for additional time to conduct discovery pursuant to Rule 56(d) prior to entering a briefing schedule on the motion for partial summary judgment. [See 160.]

The Court does not find this argument convincing. Rule 56(d) motions must specifically identify the reasons why the nonmovant cannot present facts essential to justify its opposition. See *Colby v. J.C. Penney Co., Inc.*, 926 F.2d 645, 648 (7th Cir. 1991); *Design Basics, LLC v. Heller & Sons, Inc.*, 2018 WL 2086696, at *8 (N.D. Ind. May 3, 2018); *Baker v. McCorkle*, 2017 WL 2443287, at *3 (S.D. Ind. June 6, 2017) (denying request for extension of time under Rule 56(d) because plaintiff "does not show how the requested material relates in any way to Defendants' Motion for Partial Summary Judgment."). In their Rule 56(d) motion, the Steel Warehouse Defendants claimed that an extension of time was necessary in order to respond to Blopleh's motion for summary judgment because of specific discovery that was still outstanding: the depositions of five police officers, the depositions of Parsons Company and Caterpillar representatives, and the deposition of Defendant Espinal-Quiroz himself. [See 160, at 2.] The Court agreed with the Steel Warehouse Defendants that an extension of time was warranted

15

regarding the motion for summary judgment on Count 1 of the complaint because the identified remaining discovery could be relevant to that count. [See 184, at 2.] However, the Court found that none of this discovery had any bearing on the alter ego issue. [*Id.*]

The Steel Warehouse Defendants' reconsideration motion bears this out. The Steel Warehouse Defendants have not argued that the police officers, the Parsons and Caterpillar representatives, or Mr. Espinal-Quiroz, all referenced in the Rule 56(d) motion, did in fact provide evidence that was crucial to the alter ego question. Instead, they attach to their motion other discovery *that was not at all mentioned in their previous Rule 56(d) request*. As such, the Rule 56(d) motion was properly denied and the Court will not reconsider its previous decision on this point. See *Spierer*, 798 F.3d at 507 (affirming denial of Rule 56(d) motion where parties did not ask for any specific discovery in order to respond to summary judgment); *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014) (district court did not abuse its discretion in denying additional discovery where plaintiffs had identified two discrete areas of discovery necessary to respond to summary judgment motion, and "[n]either of these topics were material to the district court's summary judgment ruling"); *West Bend Mut. Ins. Co. v. Procaccio Painting & Drywall Co., Inc.*, 928 F. Supp. 2d 976, 982 (N.D. Ill. 2013) (the only evidence that plaintiff contended would require additional time to explore through discovery "would have no bearing on the Court's interpretation of the parties' agreements and, therefore, does not warrant the denial of [defendant's] Motion for Summary Judgment under Rule 56(d).").[5]

---

[5] The Court also notes that the Steel Warehouse Defendants characterize the partial summary judgment motion as having been fully briefed during the "early stages" of fact discovery. [See 315, at 5, 7; 319, at 7.] While it is true that the fact discovery deadline was continually extended and did not close until January 2018 to obtain specific items of discovery that remained outstanding, [see 321], the operative summary judgment motion was filed in September 2016, approximately two years after the case was filed and well after the fact discovery process had commenced.

Finally, the Steel Warehouse Defendants argue that it would be inequitable to ignore the evidence that they have submitted as part of their motion for reconsideration. In light of the procedural history of this case generally and the partial summary judgment motion specifically, the Court disagrees. It is the parties' responsibility to put before the Court in the proper manner the evidence that they would like it to consider on a summary judgment motion. See *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015). The Steel Warehouse Defendants did not do that in this case: they did not submit a competent affidavit from Mr. Lerman, and they did not attach any corporate documents that they now contend are critical to their alter ego arguments. It is not inequitable to refuse to consider evidence that is not put forward in accordance with governing rules, particularly at the summary judgment stage, even if that means contrary evidence is thus left unaddressed. *Cf. Bordelon*, 233 F.3d at 529 (where statement of facts submitted in response to summary judgment does not strictly comply with local rules, "the movant's assertions of material fact are deemed admitted—and this consequence applies regardless of what contrary evidence is in the record."). The bottom line is that, contrary to the Steel Warehouse Defendants' protestations, they were not *denied* the opportunity to present the "full record in this case on the issue of alter ego" [319, at 7] by the Court or by Plaintiffs. Rather, they failed of their own accord to (1) marshal evidence entirely within their own control and (2) present that evidence in a manner that complied with basic procedural requirements.

**B.     The "Alter Ego" Issue Is Susceptible to Ruling on Summary Judgment**

In April 2018, the parties submitted supplemental briefing on the reconsideration motion to address a further argument raised by the Steel Warehouse Defendants. In this supplemental briefing, the Steel Warehouse Defendants argue that piercing the corporate veil on an alter ego

17

theory is an equitable remedy, not a legal remedy. According to Defendants, this means that the issue should only be determined by the Court post-judgment, after all of the evidence in the case has been heard. [362, at 3.] Blopleh responds that the Steel Warehouse Defendants have waived this argument by not raising it earlier, and in any event Rule 56 applies to equitable claims as well as legal ones. [364, at 2–3.] Blopleh also argues that he is not seeking an advisory opinion as to whether one Steel Warehouse entity will eventually be held financially responsible in the event a judgment is rendered against another, but instead is alleging that Steel Warehouse Company LLC is the true and actual motor carrier subject to federal regulations, while Steel Warehouse Inc. is a mere strawman. [*Id.*, at 4.]

The Court agrees with Blopleh. The case that the Steel Warehouse Defendants cite for the proposition that this issue must be decided by the Court, rather than the jury, does not represent a recent change in the law that would warrant reconsideration. See *Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731 (7th Cir. 2004); see also *Ligas*, 549 F.3d at 501 (reconsideration may be appropriate where there has been a significant change in the law since the Court's decision). But even considering the substance of the Steel Warehouse Defendants' argument, the Court does not find it persuasive. Courts routinely consider motions for summary judgment that address whether one company can be treated as the alter ego of another. See, *e.g.*, *Judson Atkinson Candies, Inc., v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) ("Judson Atkinson has failed to show that LMC is an alter ego of CIC or Carroll and thus, the district court properly granted summary judgment for those defendants"); *Chicago Florsheim Shoe Store Co. v. Cleutt, Peabody & Co., Inc.*, 826 F.2d 725, 728-29 (7th Cir. 1987) (affirming grant of summary judgment on alter ego claim, citing *Celotex*); *Trustees of the Chi. Painters & Decorators Pension Fund v. John Kny Painting & Decorating, Inc.*, 2016

18

WL 406328, at *5 (N.D. Ill. Feb. 3, 2016) (denying cross-motions for summary judgment on alter ego issue); *SMS Assist L.L.C. v. E. Coast Lot & Pavement Maintenance Corp.*, 913 F. Supp. 2d 612, 631–32 (N.D. Ill. 2012) (granting motion for summary judgment on alter-ego argument after recognizing that this was a question for the Court); *NNDYM IN, Inc. v. UV Imports, Inc.*, 2013 WL 596150, at *4–5 (S.D. Ind. Feb. 14, 2013) (considering, but denying, summary judgment on piercing the corporate veil issue); *Trustees of NECA-IBEW Pension Ben. Trust Fund v. Springman*, 2009 WL 1089549, at *6 (S.D. Ill. Apr. 22, 2009) (granting summary judgment on alter ego theory of liability in ERISA case); *Laborers' Pension Fund & Laborers' Welfare Fund of the Health & Welfare Dep't of the Constr. & Gen. Laborers' Dist. Council of Chi. & Vicinity v. Paragon Paving, Inc.*, 2004 WL 816768, at *3–4 (N.D. Ill. Mar. 26, 2004) (granting summary judgment and piercing corporate veil); *Joiner v. Ryder Sys. Inc.*, 966 F. Supp. 1478, 1483–88 (C.D. Ill. 1996) (considering the alter ego issue on summary judgment). *International Financial Services*, the case on which the Steel Warehouse Defendants' supplemental argument is based, does not mandate that the alter ego issue be decided by the Court post-judgment: the Seventh Circuit merely notes that this is one way a Court could independently decide this equitable question while still allowing a jury trial on substantive legal issues. *Int'l Fin. Servs.*, 356 F.3d at 737. Thus, the Court discerns no issue with its decision on summary judgment that Steel Warehouse Inc. and Steel Warehouse Company LLC are alter egos.

In sum, the Court denies the Steel Warehouse Defendants' motion for reconsideration of its order granting partial summary judgment to Blopleh on Count 6 of the Third Amended Complaint. As the Court previously stated, the Court in its previous opinion [286] as well as in this opinion has only decided whether Steel Warehouse Inc. and Steel Warehouse Company LLC

are alter egos, and thus expresses no opinion on any other issues that may arise in the course of this lawsuit, such as whether Defendant Espinal-Quiroz can be considered an agent or employee of Steel Warehouse Inc. and Steel Warehouse Company LLC, or whether Steel Warehouse Company LLC and Steel Warehouse Inc. owe a duty to Blopleh.

**IV.     Conclusion**

For the reasons explained above, Defendants' motion [315] is denied. In addition, as a housekeeping matter, the motion for reconsideration that Defendants filed as docket entry 118 on the individual Blopleh case docket, 14-cv-7364, instead of the instant master case docket, is denied as moot. This case is set for further status hearing on July 24, 2018 at 9:00 a.m. to discuss whether briefing schedules should be set for all Plaintiffs' motion [290] to extend the Court's ruling to the consolidated cases and Blopleh's motion for partial summary judgment as to liability [297].

Date:   July 9, 2018                               _____
                                                   Robert M. Dow, Jr.
                                                   United States District Judge